**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**CONMED CORPORATION,**

                              **Plaintiff,**

   vs.                                                      **6:21-CV-841
(MAD/ML)**

**FEDERAL INSURANCE COMPANY,**

                              **Defendant.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **CONMED CORPORATION**<br>525 French Road<br>Utica, New York 13502<br>Attorneys for Plaintiff | **DANIEL S. JONAS, ESQ.** |
| **CONMED CORPORATION**<br>1616 Long Ridge Road<br>Stamford, Connecticut 06903<br>Attorneys for Plaintiff | **ERICA LYNN VISOKEY, ESQ.** |
| **HANCOCK ESTABROOK, LLP**<br>1800 AXA Tower I<br>100 Madison Street<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **JOHN G. POWERS, ESQ.**<br>**MARY L. D'AGOSTINO, ESQ.** |
| **COHEN ZIFFER FRENCHMAN &**<br>**McKENNA LLP**<br>1325 Avenues of the Americas – 25th Floor<br>New York, New York 10019<br>Attorneys for the Plaintiff | **MERIDITH ELKINS, ESQ.**<br>**ROBIN L. COHEN, ESQ.** |
| **ROBINSON & COLE LLP**<br>Chrysler East Building<br>666 Third Avenue, 20th Floor<br>New York, New York 10017<br>Attorneys for Defendant | **LAWRENCE KLEIN, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff, CONMED Corporation, initiated this lawsuit against Defendant, Federal Insurance Company, on July 26, 2021.  *See* Dkt. No. 1.  In its complaint, Plaintiff alleges that Defendant breached the terms of their insurance contract when Defendant failed to defend Plaintiff's landlord in a lawsuit in Georgia.  *See* Dkt. No. 1 at ¶ 11.  On October 22, 2022, the parties cross moved for judgment on the pleadings.  *See* Dkt. Nos. 24, 25.  For the following reasons, Plaintiff's motion is granted and Defendant's motion is denied.

**II. BACKGROUND**

Plaintiff, a medical technology company, operates a distribution warehouse facility in Lithia Springs, Georgia.  *See* Dkt. No. 1 at ¶ 3.  Since 2009, Plaintiff has purchased insurance policies from Defendant, which include coverage for defense costs, indemnification obligations, and other losses resulting from bodily injury.  *See* Dkt. No. 1 at ¶ 21.

Plaintiff's medical equipment is sterilized by non-party Sterigenics by use of Ethylene Oxide ("EtO").  *Id.* at ¶¶ 3, 6.  In May 2020, Plaintiff and Sterigenics were sued by Plaintiff's employees, alleging that they were exposed to unsafe levels of EtO.  *Id.* at ¶ 6; *Essence Alexander, et al. v. Sterigenics U.S., LLC, et al.*, C.A. No. 20-A-1645 (State Court of Cobb County) ("Alexander Action").  On March 10, 2022, this Court held that Defendant had an obligation to defend Plaintiff's indemnitee, Sterigenics, in the Alexander Action pursuant to the insurance policies between Plaintiff and Defendant.  *See CONMED Corp. v. Fed. Ins. Co.*, No. 6:21CV0083, 2022 WL 715563 (N.D.N.Y. Mar. 10, 2022).

On April 26, 2021, the same plaintiffs in the Alexander Action initiated a separate lawsuit against Plaintiff's landlords ("Landlord Action").  *See* Dkt. No. 1 at ¶ 34.  Plaintiff leases its

Georgia facility from Breit Industrial Canyon GA1B01 LLC ("Breit"), formerly known as Cabot IV-GA1B01 LLC ("Cabot"). Breit and Cabot retained Link Logistics Real Estate Management LLC ("Link"), which in turn retained Stream Realty Partners-Atlanta, L.P. ("Stream"), to perform property management activities at the facility. *Id.* at ¶ 5. The Landlord Action, similar to the Alexander Action, alleges that Plaintiff's employees were exposed to unsafe levels of EtO. *Id.* at ¶ 7. Specifically, the Landlord Action alleges negligence, aiding and abetting tortious conduct, fraud, wrongful death, and vicarious liability/respondeat superior against Breit, Cabot, Link, and Stream (collectively, "Landlord Defendants"). *Id.* at ¶ 39; Dkt. No. 1-3 at ¶¶ 60-134.

On June 30, 2021, the Landlord Defendants tendered the defense and indemnity of the Landlord Action to Plaintiff, citing the lease between the parties, which Plaintiff accepted. *Id.* at ¶¶ 43-44. As a result, Plaintiff is defending the Landlord Defendants in the Landlord Action. *Id.* at ¶ 44. On July 1, 2021, Plaintiff gave notice of the Landlord Action and the Landlord Defendants' tender to Defendant. *Id.* at ¶ 45. On July 23, 2021, Plaintiff alleges that Defendant did not accept the Landlord Defendants' defense, and instead sought to further delay a decision. *Id.* at 49. On July 26, 2021, Plaintiff initiated this suit, alleging that Defendant's failure to accept the Landlord Defendants' defense was a breach of the insurance policies. *See id.*

A. **The Insurance Policies**

Since 2009, Plaintiff has purchased insurance from Defendant. *See id.* at ¶ 21. The insurance policies cover consecutive year-long periods from July 16, 2009, through August 1, 2021, and are governed by New York law. *Id.* at ¶¶ 21, 26; *see generally* Dkt. No. 1-1. The insurance policies include as "insured" the "Lessors of Premises," which state as follows:

> Persons or organizations from who you lease premises are **insureds**[1]; but they are **insureds** only with respect to the ownership,

---

[1] Bold words are defined terms under the insurance policies.

> maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.
>
> However, no such person or organization is an **insured** with respect to any:
>
> - damages arising out of their sole negligence;
>
> - **occurrence** that occurs, or offense that is committed, after you cease to be a tenant in the premises; or
>
> - structural alteration, new alteration, new construction or demolition operations performed by or on behalf of them.

Dkt. No. 1-1 at 25 (emphasis in original). The insurance policies state that that Defendant has the "duty to defend the **insured** against a **suit** even if such **suit** is false, fraudulent or groundless." *Id*. at 21. Plaintiff contends that the Landlord Defendants are insureds, and therefore the duty to defend is extended to them.

Alternatively, the insurance policies also provide for "damages that the **insured** becomes legally obligated to pay by reason of liability … assumed in an **insured contract**; for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." *Id.* at 20. The insurance policies define "insured contract" to include "a lease of premises." *Id*. at 43. Plaintiff, therefore, also contends that Defendant is required to defend the Landlord Defendants because Plaintiff assumed the liability for their defense in an insured contract.

The policy includes several exclusions. Relevant here, the insurance policies exclude coverage for liability for bodily injury assumed in a contract, unless that contract is an insured contract. *Id.* at 27. Additionally, the policy excludes bodily injury arising out of "the actual

alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." *Id.* at 35.

**B.     Plaintiff and the Landlord Defendants' Lease Agreement**

Since 2008, Plaintiff has leased its distribution warehouse from the Landlord Defendants, pursuant to a lease agreement dated June 23, 2008, Dkt. No. 1-4, and a "Second Amendment to the Lease" dated September 20, 2019.  Dkt. No. 1-5.  Relevant here, the lease includes the following indemnification clause:

> 18.2    Tenant Indemnification. Subject to Section 11.3 above (in the event Landlord files an insurance claim), *except in the event of, and to the extent of, Landlord's negligence or willful misconduct*, Tenant hereby indemnifies, defends, and holds Landlord, Agent, Landlord's members and their respective affiliates, owners, partners, members, directors, officers, agents and employees (collectively, "Landlord Indemnified Parties") harmless from and against any and all Losses (defined below) arising from or in connection with any or all of: (a) the conduct or management of either or both the Property and the Premises or any business therein, or any work or Alternations done, or any condition created by any or all of Tenant and Tenant Parties in or about the Premises during the Term or during the period of time, if any, prior to the Commencement Date that Tenant has possession of, or is given access to, the Premises; (b) any act, omission or negligence of any or all of Tenant and Tenant's Parties; (c) any accident, injury or damage whatsoever occurring in, at or upon either or both of the Property and the Premises and caused by any or all of the Tenant and Tenant's Parties; (d) any breach by Tenant of any or all of its warranties, representations and covenants under this Lease that is not cured within any applicable periods of notice and cure; (e) any actions necessary to protect Landlord's interest under this Lease in a bankruptcy proceeding or other proceeding under the Bankruptcy Code; (f) the creation or existence of any Hazardous Materials in, at, on or under the Premises or the Property, if and to the extent brought to the Premises or the Property, or caused by Tenant or any party within Tenant's control; and (g) any violation or alleged violation by any or all of Tenant and Tenant's Parties of any Law (collectively, "Tenant's Indemnified Matters").

Dkt. No. 24-4 at 15 (emphasis added).

C.   **The Underlying Landlord Action**

On April 26, 2021, the Landlord Action was brought by 53 current and former employees of Plaintiff, as well as contractors and other temporary workers, at Plaintiff's Lithia Springs distribution facility from 2007 to 2019. *See* Dkt. No. 1 at ¶¶ 34-35; *Essence Alexander, et al. v. CABOT IV-GA1B01 LLC, et al.*, C.A. No. 21-SV-00368. The same plaintiffs previously brought a similar action against Plaintiff and its contractor, Sterigenics, for exposure to unsafe levels of EtO. *Id.* at ¶ 34. The Landlord Action separately alleges that the Landlord Defendants permitted the storage of large quantities of EtO without properly ventilating the facility, failed to properly construct and/or design the facility, failed to reduce the exposure to EtO, and caused an unsafe amount of EtO to be within the facility. Dkt. No. 1-3 at ¶¶ 46-49. Specifically, the Landlord Action alleges negligence, aiding and abetting tortious conduct, fraud, wrongful death, and vicarious liability/respondeat superior. *Id.* at ¶¶ 60-134. Plaintiff is not a party to the Landlord Action.

## III. DISCUSSION

A.   **Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021). "Judgment pursuant to Rule 12(c) can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties" because "initial

interpretation of a contract is a question of law for a court." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013).

A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Therefore, on such a motion, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant. *See, e.g., Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *VoiceAge Corp.*, 926 F. Supp. 2d at 529. "When a plaintiff moves for judgment on the pleadings, the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Allstate Ins. Co.*, 537 F. Supp. 3d at 545 (internal quotation marks omitted). "In other words, if a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *Id.*

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). The Court may also review any document incorporated by reference in one of the pleadings. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Finally, the Court may consider a document not specifically incorporated by reference but on which the complaint relies and which is integral to it. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

**B.     Insurance Contract Principles**

Under New York law,[2] "an insurer has an 'exceedingly broad' duty to defend the insured." *Cent. Mut. Ins. Co. v. Willig*, 29 F. Supp. 3d 112, 118 (N.D.N.Y. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). But "when the uncontroverted facts prove that no duty to indemnify exists[,] the insurer must be relieved of its duty to defend." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003). However, "[a]s the Court of Appeals for the Second Circuit emphasized, the duty to defend 'perdures until it is determined with certainty that the policy does not provide coverage.'" *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001)).

It is not "'material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusionary provisions.'" *Assunta, Inc. v. Penn-Am. Ins. Co.*, No. 1:09-CV-350, 2010 WL 93459, *2 (N.D.N.Y. Jan. 7, 2010) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). "Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased." *Id.* To determine whether the duty to defend exists, courts first look to "the allegations within the four corners of the underlying complaint." *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 06-CV-1117, 2010 WL 1257943, *5 (N.D.N.Y. Mar. 25, 2010); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992) ("Although [the insured] denies the allegations of the [underlying] complaint, we must assume – for the purpose of determining coverage – that what is alleged actually happened").

Pursuant to New York law, "an insurance contract is interpreted to give effect to the intent

---

[2] The parties agree that the interpretation of the insurance policy is governed by New York law.

of the parties as expressed in the clear language of the contract." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). "If the provisions are clear and unambiguous, courts are to enforce them as written." *Id.* (citing *Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.*, 80 N.Y.2d 986 (1992)). But if the policy language is ambiguous, then "the ambiguity must be interpreted in favor of the insured." *Id.*

Defendant also alleges that coverage for the Landlord Action falls into certain exclusions within the insurance policies. To assert a policy exclusion, an insurer must show that the claims in the underlying complaint fall "'*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'" *Napoli, Kaiser & Bern, LLP*, 295 F. Supp. 2d at 338 (quoting *Seaboard Surety Co.*, 486 N.Y.S.2d 873) (emphasis in original).

**C.     Analysis**

The parties dispute whether Defendant, the insurer, is obligated to defend the Landlord Defendants in the Landlord Action. As stated above, the insurance policies provide that, although Plaintiff is the primary insured, additional insureds under the policies include "[p]ersons or organizations from whom [Plaintiff] lease[s] premises . . . with respect to the ownership, maintenance or use of that particular part of such premises leased to [Plaintiff] . . . if [Plaintiff is] contractually obligated to provide them with such insurance as is afforded by this contract[,]" except where damages arise out of the additional insured's "sole negligence." Dkt. No. 1-1 at 25. Additionally, the insurance policies provide that lease agreements are "insured contracts." *Id.* at 43. The insurance policies provide that "damages that the insured becomes legally obligated to pay by reason of liability … assumed in an insured contract; for bodily injury or property damage caused by an occurrence to which this coverage applies." *Id.* at 20.

Defendant argues that Plaintiff was not required to tender a defense to the Landlord Defendants pursuant to the lease agreement, and therefore Defendant is not required to defend the Landlord Defendants as insured or because the lease agreement was an insured policy. Indeed, the lease agreement only requires Plaintiff to indemnify the Landlord Defendants "except in the event of, and to the extent of, Landlord's negligence or willful misconduct …." Dkt. No. 24-4 at 15. Defendant argues that the Landlord Action only seeks to hold the Landlord Defendants liable for their own negligence, and not Plaintiff's. Defendant asserts that the indemnity agreement did not require Plaintiff to indemnify the Landlord Defendants "because the defendants in the Landlord Action have been sued for their own independent alleged acts of negligence, not for anything [Plaintiff] could have done." Dkt. No. 24-8 at 5.

Plaintiff contends that it properly indemnified the Landlord Defendants pursuant to the lease agreement, and, even if it did not, that the Landlord Defendants are additional insureds regardless. The Court agrees with Plaintiff that its indemnification of the Landlord Defendants was pursuant to the lease. The Landlord Defendants are therefore additional insured and contractual indemnitees under the insurance policies. Any negligence alleged against the Landlord Defendants arises out of, and is intertwined with, Plaintiff's own negligence regarding EtO sterilization.

Although Plaintiff is not a defendant in the Landlord Action, the underlying complaint in the Landlord action alleges the same injuries from the same harms as the same plaintiffs had already alleged against Plaintiff in the Alexander Action. For example, the underlying complaint alleges that the plaintiffs were injured from working at "[t]he Facility [which] received, warehoused, and distributed items that had been sterilized with EtO." Dkt. No. 1-3 at ¶ 43. It further alleges that the Landlord Defendants "own and rent the Facility to [Plaintiff] ConMed

10

Corporation … and ensur[e] that the Facility is appropriate and safe for the uses made of the Facility by ConMed. … [the Landlord] Defendants breached the duty of care they owed to [underlying] Plaintiffs to prevent [underlying] Plaintiffs from suffering foreseeable injury stemming from EtO exposure during [underlying] Plaintiffs' work in the Facility." *Id.* at ¶¶ 45-47. The underlying complaint also alleges that the Landlord Defendants "in agreement with its tenant [Plaintiff], conspired to uninform and disinform [underlying] Plaintiffs about the presence of EtO" at the Facility. *Id.* at ¶¶ 51-54.

The lease agreement does not require Plaintiff to indemnify the Landlord Defendants "in the event of, and to the extent of, Landlord's negligence or willful misconduct." Dkt. No. 24-4 at 15. But it does require Plaintiff to indemnify the Landlord Defendants for "any act, omission or negligence of any or all of Tenant and Tenant's Parties; … any accident, injury or damage whatsoever occurring in, at or upon either or both of the Property and the Premises and caused by any or all of the Tenant and Tenant's Parties; … [and] the creation or existence of any Hazardous Materials in, at, on or under the Premises or the Property, if and to the extent brought to the Premises or the Property, or caused by Tenant or any party within Tenant's control." *Id.* at 15. Here, the injuries suffered to the underlying plaintiffs are all inextricably intertwined with Plaintiff's alleged negligence—specifically regarding the existence of hazardous materials at the facility.

Defendant's argument relies on the fact that only the Landlord Defendants are named in the Landlord Action, and Plaintiff is not. Plaintiff is instead being sued for the same nucleus of facts in the Alexander Action. The Court fails to see the importance of whether the underlying plaintiffs brought two separate lawsuits against the Landlord Defendants and Plaintiff or a single lawsuit. The extent to which Landlord Defendants are being sued for their own "negligence or

11

willful misconduct" is derived from acts committed by Plaintiff that are explicitly identified as acts for which Plaintiff must indemnify the Landlord Defendants. Plaintiff allegedly brought in a hazardous material, EtO, and injured the underlying plaintiffs. Indeed, such a subsequent suit against the Landlord Defendants is likely the exact type of liability contemplated in the indemnity provision. The fact that the underlying plaintiffs brought two separate suits is irrelevant. Accordingly, Plaintiff correctly indemnified the Landlord Defendants.

Additionally, "an insurer has an exceedingly broad duty to defend the insured." *Cent. Mut. Ins. Co.*, 29 F. Supp. 3d at 118 (quotations omitted). "The duty of the insurer to defend the insured rests solely on whether the complaint alleges *any facts or grounds* which bring the action within the protection purchased." *Assunta, Inc.*, 2010 WL 93459, at *2 (emphasis added). Defendant cannot demonstrate that there is no potential coverage for any portion of the Landlord Action. For example, if the Landlord Defendants are found to be not at fault, or less at fault than Plaintiff, then the Landlord Defendants would not have been sued for their own "negligence or willful misconduct," but rather for Plaintiff's.

Because Plaintiff correctly indemnified the Landlord Defendants, Defendant is required to pay defense costs for the Landlord Defendants in the Landlord Action. The Landlord Defendants are both additionally insureds and contractual indemnitees under the insurance policies between Plaintiff and Defendant. The insurance policies define a lessor as an additional insured if Plaintiff is "contractually obligated to provide them with such insurance as is afforded by this contract." Dkt. No. 1-1 at 25. Because Plaintiff was contractually obligated to indemnify the Landlord Defendants, they are additional insureds under the insurance policies. The insurance policies also defined insured contract to include a lease and require Defendant to pay damages that Plaintiff owes pursuant to an insured contract. *Id.* at 20, 43. Because Plaintiff properly indemnified the

Landlord Defendants pursuant to an insured contract, Defendant must pay the defense costs.

Lastly, Defendant claims two exclusions preclude coverage, the contract exclusion and the pollution exclusion. The contract exclusion expressly retains liability for damages assumed in an "insured contract." Because, as discussed above, the liability was assumed in an insured contract, it does not apply. The pollution exclusion excludes "bodily injury" arising out of "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," and does not retain liability if the damages are assumed in an "insured contract."

To assert a policy exclusion, an insurer must show that the claims in the underlying complaint fall "*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Napoli, Kaiser & Bern, LLP*, 295 F. Supp. 2d at 33 (emphasis in original). The New York Court of Appeals has held that a similar pollution exclusion only applies where the damages alleged "are truly environmental in nature" or "result from pollution to the environment." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003). In *Bell Painting*, the court held that paint fumes were not pollutants because such a broad definition of pollutants "infinitely enlarge the scope of the term 'pollutants,' and seemingly contradict both a 'common speech' understanding of the relevant terms and the reasonable expectations of a businessperson." *Id.* at 387. Alternatively, the court held, that any injury was not caused by the "discharge, dispersal, seepage, migration, release or escape" of the fumes. *Id.* Rather, "it strains the plain meaning, and obvious intent, of the language to suggest that these fumes, as they went from the container to [the injured party's] lungs, had somehow been 'discharged, dispersed, released or escaped.'" *Id.* at 388.

The Court finds that the Landlord Action did not allege injuries that were "truly environmental in nature." *Id.* at 387. Rather, the alleged injuries in the Landlord Action, similar

to *Bell Painting*, are the result of fumes that traveled a short distance. Accordingly, the pollution exclusion does not bar Defendant's duty to defend the Landlord Defendants.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 25) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 24) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of the Plaintiff CONMED Corporation, and against defendant Federal Insurance Company; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 9, 2022
Albany, New York

Mae A. D'Agostino
U.S. District Judge